EXHIBIT A- PART 1 OF 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
--------------------------------------------------------------------x
LEGACY CAPITAL 26 LLC,

                                                    **Index No.**

                              Plaintiff,            **SUMMONS**

        -against-

  CHALDEAN ENTERPRISE LLC d/b/a SPEEDY
  WEEDY and FURAT ALSAIGH,

                              Defendants.
--------------------------------------------------------------------x

To the above-named Defendant(s):

        YOU ARE HEREBY SUMMONED and required to serve upon Plaintiff's attorney

an answer to the complaint in this action within twenty days after the service of this

summons, exclusive of the day of service, or within thirty days after service is complete if

the summons is not personally delivered to you within the State of New York. In case of

your failure to answer, judgment will be taken against you by default for the relief

demanded in the annexed complaint.

        Plaintiff designates Kings County as the place of trial. The basis of the venue is

designated in the Agreement between the parties.

 Dated: June 8, 2022                    By: */s/ Erica R. Gilerman*
 Brooklyn, NY                           Erica R. Gilerman, Esq.
                                        3140 Emmons Avenue
                                        Brooklyn, NY 11235
                                        Phone: 786-436-9760
                                        Email: erica@gilermanlaw.com
                                        *Attorneys for Plaintiff*

    TO DEFENDANT(S):

    CHALDEAN ENTERPRISE LLC dba SPEEDY WEEDY:2516 Valley Waters Ct,
    Spring Valley CA, 91978

    FURAT ALSAIGH: 8240 Station Village Ln 2101, San Diego, CA 92108

Case 1:22-cv-05758   Document 1-1   Filed 07/07/22   Page 3 of 16

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-----------------------------------------------------------------------x

LEGACY CAPITAL 26 LLC,                                    **Index No.**

                              Plaintiff,

         -against-

CHALDEAN ENTERPRISE LLC d/b/a SPEEDY
WEEDY and FURAT ALSAIGH,

                              Defendants.

-----------------------------------------------------------------------x

**NOTICE OF ELECTRONIC FILING**
**(Mandatory Case)**
(Uniform Rule § 202.5-bb)

**You have received this Notice because:**

1. The Plaintiff/Petitioner, whose name is listed above, has filed this case using the New York State Courts E-filing system ("NYSCEF"), and
2. You are a Defendant/Respondent (a party) in this case.
   **If you are represented by an attorney**: Give this Notice to your attorney. (<u>Attorneys</u>: see "Information for Attorneys" on page 2).
   **If you are not represented by an attorney:**

**You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.**

**If you choose to participate in e-filing, you must have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service of documents.**

The **benefits of participating in e-filing** include:

> serving and filing your documents electronically;
> free access to view and print your e-filed documents;
> limiting your number of trips to the courthouse;
> paying any court fees on-line (credit card needed).

**To register for e-filing or for more information about how e-filing works:**
> visit: www.nycourts.gov/efile-unrepresented; or

contact the Clerk's Office or Help Center at the court where the case was filed. Court contact information can be found at www.nycourts.gov

To find legal information to help you represent yourself, visit www.nycourthelp.gov

**Information for Attorneys**
**(E-Filing is Mandatory for Attorneys)**

An attorney representing a party who is served with this notice must either:

1. Immediately record their representation within the e-filed matter on the NYSCEF site www.nycourts.gov/efile; or

2. File the Notice of Opt-Out Form with the clerk of the court where this action is pending and serve on all parties. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the knowledge to operate such equipment. (§202.5bb(e))

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; email: efile@nycourts.gov).

Dated: June 8, 2022
      Brooklyn, NY

By: */s/ Erica R. Gilerman*
Erica R. Gilerman, Esq.
3140 Emmons Avenue
Brooklyn, NY 11235
Phone: 786-436-9760
Email: erica@gilermanlaw.com
*Attorneys for Plaintiff*

TO DEFENDANT(S):

CHALDEAN ENTERPRISE LLC dba SPEEDY WEEDY: 2516 Valley Waters Ct, Spring Valley CA, 91978

FURAT ALSAIGH: 8240 Station Village Ln 2101, San Diego, CA 92108

Case 1:22-cv-05758  Document 1-1  Filed 07/07/22  Page 5 of 16

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------------------x
LEGACY CAPITAL 26 LLC,                                    **Index No.**

                                   Plaintiff,            **VERIFIED COMPLAINT**

        -against-

CHALDEAN ENTERPRISE LLC d/b/a SPEEDY
WEEDY and FURAT ALSAIGH,

                                   Defendants.
-----------------------------------------------------------------------x

Plaintiff, LEGACY CAPITAL 26 LLC, by its attorney, Erica R. Gilerman, Esq. as and for

its complaint against Defendants(s) herein, alleges as follows:

1.  Plaintiff LEGACY CAPITAL 26 LLC ("Plaintiff") is a New York limited liability

    company engaged in the receivables financing business.

2.  Upon information and belief, CHALDEAN ENTERPRISE LLC d/b/a SPEEDY

    WEEDY ("Defendant-Seller") is a foreign corporation.

3.  Defendant FURAT ALSAIGH ("Defendant Guarantor") is an individual residing

    in the State of California and upon information and belief is a principal of

    Defendant-Seller.

4.  Pursuant to a receivables purchase agreement and personal guaranty dated April

    26, 2022 (collectively, the "Agreement"), Plaintiff purchased from Defendant-

    Seller $447,000.00 ("Purchased Amount") of each future account and payment

    obligation owing to Defendant-Seller from its customers as they are generated in

    the course of Defendant-Seller's business ("Future Receivables"). A copy of the

    Agreement is attached as *Exhibit A*.

5.  The Agreement contains the parties' express consent to the jurisdiction of the courts

Case 1:22-cv-05758   Document 1-1   Filed 07/07/22   Page 6 of 16

located in the State of New York.

6. Pursuant to the Agreement, Plaintiff was authorized to collect via an ACH electronic debit of the Future Receivables, until such time that Plaintiff collected the total Purchased Amount.

7. The Agreement containts Defendant-Seller's express covenant not to revoke its ACH authorization to Plaintiff or otherwise take any measure to interfere with Plaintiff's ability to collect the Future Receivables.

8. Contrary to Defendant-Seller's express covenant set forth above, Defendant-Seller materially breached the terms of the Agreement on May 26, 2022, by changing the designated bank account without Plaintiff's authorization, by placing a stop payment on Plaintiff's debits to the account or by otherwise taking measures to interfere with Plaintiff's ability to collect the Future Receivables. A copy of the payment history is attached as *Exhibit B*.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Breach of Contract as to Defendant-Seller)**

9. After a series of payments, on or about May 26, 2022, Defendant-Seller stopped paying and went into default. Plaintiff has not received any cleared payments from the Defendants since the default.

10. Plaintiff demanded repayment of money paid under the Agreement. Defendant has failed and refused to pay the sums due under the Agreement.

11. The Agreement provides that Defendant-Seller shall be in default of the Agreement if, *inter alia*, it breaches any covenants contained therein or makes any representation or warranty providng to have been incorrect, false or misleading in any material respect.

INDEX NO. 516493/2022
RECEIVED NYSCEF: 06/08/2022

Case 1:22-cv-05758 Document 1-1 Filed 07/07/22 Page 7 of 16

12. As a result of Defendant-Seller's breach of the provisions set forth above, Defendant-Seller has defaulted under the Agreement.

13. Pursuant to the Agreement, in the event of Defendant-Seller's default, Plaintiff may declare the total amount of receivables purchased and not delivered as immediately due and owing to Plaintiff, including costs and fees. Plaintiff now has a balance of $346,434.00, in undelivered Future Receivables, along with a contractural default fee of $2,500.00 ("Default Fee").

14. Subtracting the amount of receivables Plaintiff has previously collected from Defendant-Seller under the Agreement from the total Future Receivables purchased by Plaintiff, there is presently due and owing from Defendant-Seller to Plaintiff the amount of $348,934.00, with interest from May 26, 2022, plus its costs and expenses of collection, including reasonable attorney's fees.

15. Pursuant to the terms of the Agreement, the Defendant-Seller agreed to pay Plaintiff's reasonable attorney's fees.

### AS AND FOR A SECOND CAUSE OF ACTION
**(Breach of Guaranty as to Defendant Guarantor)**

16. Plaintiff repeats and re-alleges paragraphs 9 through 15 above, as though more fully set forth herein at length.

17. The Agreement contains Defendant Guarantor's separately executed and unconditional guarantee of payment in the event of default under the Agreement by Defendant-Seller ("Guaranty").

18. Plaintiff made demand upon Defendant Guarantor to pay the outstanding balance due under the Agreement, which Defendant Guarantor has failed and refused to do.

19. As a result of Defendant-Seller's breach and default under the Agreement as set

Case 1:22-cv-05758   Document 1-1   Filed 07/07/22   Page 8 of 16

forth above and pursuant to the Guaranty, there is presently due and owing from Defendant Guarantor to Plaintiff the amount of $348,934.00, with interest thereon from May 26, 2022, plus its costs and expenses of collection, including reasonable attorney's fees.

**WHEREFORE,** Plaintiff demands judgment as follows:

1. On the first cause of action, against Defendant-Seller, in the sum of $348,934.00, plus interest from May 26, 2022, plus Plaintiff's costs, expenses of collection, including reasonable attorney's fees of $87,233.50, or any such other amount as the court deems just.

2. On the second cause of action, against Defendant Guarantor, in the sum of $348,934.00, plus interest from May 26, 2022, plus Plaintiff's costs, expenses of collection, including reasonable attorney's fees of $87,233.50, or any such other amount as the court deems just.

3. Plaintiff's costs and expenses and such other and further relief as the court may deem just and proper.


Dated: June 7, 2022

By: */s/ Erica R. Gilerman*

Erica R. Gilerman, Esq.
3140 Emmons Avenue
Brooklyn, NY 11235
Phone: 786-436-9760
Email: erica@gilermanlaw.com
*Attorneys for Plaintiff*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------------X

LEGACY CAPITAL 26 LLC,

                           Plaintiff,

         -against-

CHALDEAN ENTERPRISE LLC d/b/a SPEEDY
WEEDY and FURAT ALSAIGH,
                           Defendants.

-----------------------------------------------------------------X

Index No.

**VERIFICATION BY A PARTY**

STATE OF FLORIDA         )

COUNTY OF MIAMI-DADE     )

CHANAN FUZAILOV, being duly sworn, hereby deposes and states the following:

     I am the AUTHORIZED REPRESENTATIVE of LEGACY CAPITAL 26 LLC in the within action. I have read the foregoing Verified Complaint and know the contents thereof; the same is true to my own knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

     The foregoing statements are true under penalties of perjury.

Sworn to me this:

7 day of June 2022

Dailyn Castellanos Torres
Comm. #HH109102
Expires: March 25, 2025
Bonded Thru Aaron Notary

CHANAN FUZAILOV

Notary

FILED: KINGS COUNTY CLERK 06/08/2022 11:49 AM
INDEX NO. 516493/2022
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 06/08/2022

Case 1:22-cv-05758 Document 1-1 Filed 07/07/22 Page 10 of 16

Page 1 of 17

ver. 10/04/21



## LEGACY CAPITAL 26 LLC
c/o 200 Garden City Plaza, Suite 405 Garden City, NY 11530
(718) 509-7830

# STANDARD MERCHANT CASH ADVANCE AGREEMENT

This is an Agreement dated 04/26/2022 by and between LEGACY CAPITAL 26 LLC ("LC26") and each merchant listed below ("Merchant").

Merchant's Legal Name: CHALDEAN ENTERPRISE LLC

D/B/A/: SPEEDY WEEDY      Fed ID #: ▮▮▮▮▮▮

Type of Entity: CORPORATION

Business Address: ▮▮▮▮▮▮▮▮▮▮   City: ▮▮▮▮▮▮   State: ▮▮▮   Zip: ▮▮▮
Contact Address: 2516 VALLEY WATERS CT   City: SPRING VALLEY   State: CA   Zip: 91978
E-mail Address: _____   Phone Number: _____

| | |
|---|---|
| **Purchase Price**<br>*This is the amount being paid to Merchant(s) for the Receivables Purchased Amount (defined below).* | $ 300,000.00 |
| **Receivables Purchased Amount**<br>*This is the amount of Receivables (defined in Section 1 below) being sold.* | $ 447,000.00 |
| **Specified Percentage**<br>*This is the percentage of Receivables (defined below) to be delivered until the Receivables Purchased Amount is paid in full.* | 36 % |
| **Net Funds Provided**<br>*This is the net amount being paid to or on behalf of Merchant(s) after deduction of applicable fees listed in Section 2 below.* | $ 279,000.00 |
| **Net Amount to Be Received Directly by Merchant(s)**<br>*This is the net amount being received directly by Merchant(s) after deduction of applicable fees listed in Section 2 below and the payment of any part of the Purchase Price elsewhere pursuant to an Addendum to this Agreement.* | $ 279,000.00 |
| **Initial Estimated Payment**<br>*This is only applicable if an Addendum for Estimated Payments is being signed. This is the initial amount of periodic payments collected from Merchant(s) as an approximation of no more than the Specified Percentage of the Receivables and is subject to reconciliation as set forth in Section 4 below.* | $ 5,587.50<br>**per** DAY |

## TERMS AND CONDITIONS

**1. Sale of Future Receipts.** Merchant(s) hereby sell, assign, and transfer to LC26 (making LC26 the absolute owner) in consideration of the funds provided ("Purchase Price") specified above, all of each Merchant's future accounts, contract rights, and other obligations arising from or relating to the payment of monies from each Merchant's customers

**I have read and agree to the terms and conditions set forth above:**

Name: FURAT NAJAH ALSAIGH    Title: OWNER    Date: 4/27/2022

DocuSign Envelope ID: 68F7C641B561-4337-8BBF-5F616B49304C

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

and/or other third party payors (the "Receivables", defined as all payments made by cash, check, credit or debit card, electronic transfer, or other form of monetary payment in the ordinary course of each merchant's business), for the payment of each Merchant's sale of goods or services until the amount specified above (the "Receivables Purchased Amount") has been delivered by Merchant(s) to LC26. Each Merchant hereby acknowledges that until the Receivables Purchased Amount has been received in full by LC26, each Merchant's Receivables, up to the balance of the Receivables Purchased Amount, are the property of LC26 and not the property of any Merchant. Each Merchant agrees that it is a fiduciary for LC26 and that each Merchant will hold Receivables in trust for LC26 in its capacity as a fiduciary for LC26.

The Receivables Purchased Amount shall be paid to LC26 by each Merchant irrevocably authorizing only one depositing account acceptable to LC26 (the "Account") to remit the percentage specified above (the "Specified Percentage") of each Merchant's settlement amounts due from each transaction, until such time as LC26 receives payment in full of the Receivables Purchased Amount. Each Merchant hereby authorizes LC26 to ACH debit the specified remittances from the Account on a daily basis as of the next business day after the date of this Agreement and will provide LC26 with all required access codes and monthly bank statements. Each Merchant understands that it will be held responsible for any fees resulting from a rejected ACH attempt or an Event of Default (see Section 2). LC26 is not responsible for any overdrafts or rejected transactions that may result from LC26's ACH debiting the Specified Percentage amounts under the terms of this Agreement.

**2. Additional Fees.** In addition to the Receivables Purchased Amount, each Merchant will be held responsible to LC26 for the following fees, where applicable:

A. $ 21,000.00 - to cover underwriting and the ACH debit program, as well as related expenses. This will be deducted from payment of the Purchase Price.

B. Wire Fee - Merchant(s) shall receive funding electronically to the Account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH. This will be deducted from payment of the Purchase Price.

C. Blocked Account/Default - $2,500.00 - If LC26 considers an Event of Default to have taken place under Section 34.

D. UCC Fee - $195.00 – to cover LC26 filing a UCC-1 financing statement to secure its interest in the Receivables Purchased Amount. A $195.00 UCC termination fee will be charged if a UCC filing is terminated.

E. Court costs, arbitration fees, collection agency fees, attorney fees, expert fees, and any other expenses incurred in litigation, arbitration, or the enforcement of any of LC26's legal or contractual rights against each Merchant and/or each Guarantor, if required, as explained in other Sections of this Agreement.

**3. Cap on Collection of the Receivables Purchased Amount.** The amount that LC26 will collect from Merchant(s) towards the Receivables Purchased Amount during any specific DAY will be capped at $ 5,587.50 (the "Cap"). If the Specified Percentage of all Receivables for a specific DAY is less than the Cap, then in addition to the Specified Percentage of Receivables for that DAY, LC26 will be permitted to collect any Receivables it did not previously collect due to the Cap such that the total amount collected during that DAY does not exceed the Cap. The Cap is not applicable to make up for a business day on which LC26 is closed and does not ACH debit the Account, to subsequent attempts to collect a rejected or blocked ACH payment, or for the collection of any of the fees listed in Section 2 or if any Event of Default listed in Section 34 is considered by LC26 to have taken place.

**4. Reconciliations.** Any Merchant may give written notice to LC26 requesting that LC26 conduct a reconciliation in order to ensure that the amount that LC26 has collected equals the Specified Percentage of Merchant(s)'s Receivables under this Agreement. Any Merchant may give written notice requesting a reconciliation. A reconciliation may also be requested by e-mail to josh@legacycapitalgroupllc.com and such notice will be deemed to have been received if and when LC26 sends a reply e-mail (but not a read receipt). If such reconciliation determines that LC26 collected more than it was entitled to, then LC26 will credit to the Account all amounts to which LC26 was not entitled within seven days thereafter. If such reconciliation determines that LC26 collected less than it was entitled to, then LC26 will debit from the Account all additional amounts to which LC26 was entitled within seven days thereafter. In order to effectuate this reconciliation, any Merchant must produce with its request the login and password for the Account and any and all bank statements and merchant statements covering the period from the date of this Agreement through the date of the request for a reconciliation. LC26 will complete each such reconciliation within two business days after receipt of a written request for one accompanied by the information and documents required for it. Nothing herein limits the amount of times that such a reconciliation may be requested.

I have read and agree to the terms and conditions set forth above:

Name: FURAT NAJAH ALSAIGH    Title: OWNER    Date: 4/27/2022

DocuSign Envelope ID: 6817C641B551-4337-88E8-E5C5A6569A04

Case 1:22-cv-05758 Document 1-1 Filed 07/07/22 Page 12 of 16

Page **3** of **17**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**5. Prepayments.** Although there is no obligation to do so, any Merchant may prepay any amount towards the Receivables Purchased Amount. There will be no penalty for any prepayment made by any Merchant. Any Merchant may elect to terminate this Agreement by prepaying LC26 the amount of the balance of the Receivables Purchased Amount at that time.

**6. Merchant Deposit Agreement.** Merchant(s) shall appoint a bank acceptable to LC26, to obtain electronic fund transfer services and/or "ACH" payments. Merchant(s) shall provide LC26 and/or its authorized agent with all of the information, authorizations, and passwords necessary to verify each Merchant's Receivables. Merchant(s) shall authorize LC26 and/or its agent(s) to deduct the amounts owed to LC26 for the Receivables as specified herein from settlement amounts which would otherwise be due to each Merchant and to pay such amounts to LC26 by permitting LC26 to withdraw the Specified Percentage by ACH debiting of the account. The authorization shall be irrevocable absent LC26's written consent.

**7. Term of Agreement.** The term of this Agreement is indefinite and shall continue until LC26 receives the full Receivables Purchased Amount, or earlier if terminated pursuant to any provision of this Agreement. The provisions of Sections 4, 6, 7, 8, 10, 11, 13, 14, 15, 17, 18, 19, 22, 23, 28, 31, 32, 33, 34, 35, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, and 58 shall survive any termination of this Agreement.

**8. Ordinary Course of Business.** Each Merchant acknowledges that it is entering into this Agreement in the ordinary course of its business and that the payments to be made from each Merchant to LC26 under this Agreement are being made in the ordinary course of each Merchant's business.

**9. Financial Condition.** Each Merchant and each Guarantor (Guarantor being defined as each signatory to the Guarantee of this Agreement) authorizes LC26 and its agent(s) to investigate each Merchant's financial responsibility and history, and will provide to LC26 any bank or financial statements, tax returns, and other documents and records, as LC26 deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. LC26 is authorized to update such information and financial profiles from time to time as it deems appropriate.

**10. Monitoring, Recording, and Electronic Communications.** LC26 may choose to monitor and/or record telephone calls with any Merchant and its owners, employees, and agents. By signing this Agreement, each Merchant agrees that any call between LC26 and any Merchant or its representatives may be monitored and/or recorded. Each Merchant and each Guarantor grants access for LC26 to enter any Merchant's premises and to observe any Merchant's premises without any prior notice to any Merchant at any time after execution of this Agreement.

LC26 may use automated telephone dialing, text messaging systems, and e-mail to provide messages to Merchant(s), Owner(s) (Owner being defined as each person who signs this Agreement on behalf of a Merchant), and Guarantor(s) about Merchant(s)'s account. Telephone messages may be played by a machine automatically when the telephone is answered, whether answered by an Owner, a Guarantor, or someone else. These messages may also be recorded by the recipient's answering machine or voice mail. Each Merchant, each Owner, and each Guarantor gives LC26 permission to call or send a text message to any telephone number given to LC26 in connection with this Agreement and to play pre-recorded messages and/or send text messages with information about this Agreement and/or any Merchant's account over the phone. Each Merchant, each Owner, and each Guarantor also gives LC26 permission to communicate such information to them by e-mail. Each Merchant, each Owner, and each Guarantor agree that LC26 will not be liable to any of them for any such calls or electronic communications, even if information is communicated to an unintended recipient. Each Merchant, each Owner, and each Guarantor acknowledge that when they receive such calls or electronic communications, they may incur a charge from the company that provides them with telecommunications, wireless, and/or Internet services, and that LC26 has no liability for any such charges.

**11. Accuracy of Information Furnished by Merchant and Investigation Thereof.** To the extent set forth herein, each of the parties is obligated upon his, her, or its execution of the Agreement to all terms of the Agreement. Each Merchant and each Owner signing this Agreement represent that he or she is authorized to sign this Agreement for each Merchant, legally binding said Merchant to its obligations under this Agreement and that the information provided herein and in all of

**I have read and agree to the terms and conditions set forth above:**

Name: FURAT NAJAH ALSAIGH    Title: OWNER    Date: 4/27/2022

DocuSign Envelope ID: 6817C641B551433736E5F8B76A0304

Case 1:22-cv-05758 Document 1-1 Filed 07/07/22 Page 13 of 16

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

LC26's documents, forms, and recorded interview(s) is true, accurate, and complete in all respects. LC26 may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant(s) to LC26. An investigative report may be made in connection with the Agreement. Each Merchant and each Owner signing this Agreement authorize LC26, its agents and representatives, and any credit-reporting agency engaged by LC26, to (i) investigate any references given or any other statements obtained from or about each Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as any Merchant and/or Owners(s) continue to have any obligation to LC26 under this Agreement or for LC26's ability to determine any Merchant's eligibility to enter into any future agreement with LC26. Any misrepresentation made by any Merchant or Owner in connection with this Agreement may constitute a separate claim for fraud or intentional misrepresentation.

*Authorization for soft pulls:* Each Merchant and each Owner understands that by signing this Agreement, they are providing 'written instructions' to LC26 under the Fair Credit Reporting Act, authorizing LC26 to obtain information from their personal credit profile or other information from Experian, TransUnion, and Equifax. Each Merchant and each Guarantor authorizes LC26 to obtain such information solely to conduct a pre-qualification for credit.

*Authorization for hard pulls:* Each Merchant and each Owner understands that by signing this Agreement, they are providing 'written instructions' to LC26 under the Fair Credit Reporting Act, authorizing LC26 to obtain information from their personal credit profile or other information from Experian, TransUnion, and Equifax. Each Merchant and each Guarantor authorizes LC26 to obtain such information in accordance with a merchant cash advance application.

**12. Transactional History.** Each Merchant authorizes its bank to provide LC26 with its banking and/or credit card processing history.

**13. Indemnification.** Each Merchant and each Guarantor jointly and severally indemnify and hold harmless each Merchant's credit card and check processors (collectively, "Processor") and Processor's officers, directors, and shareholders against all losses, damages, claims, liabilities, and expenses (including reasonable attorney and expert fees) incurred by Processor resulting from (a) claims asserted by LC26 for monies owed to LC26 from any Merchant and (b) actions taken by any Processor in reliance upon information or instructions provided by LC26.

**14. No Liability.** In no event will LC26 be liable for any claims asserted by any Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect, or consequential damages, each of which is waived by each Merchant and each Guarantor.

**15. Sale of Receivables.** Each Merchant and LC26 agree that the Purchase Price under this Agreement is in exchange for the Receivables Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from LC26 to any Merchant. LC26 is entering into this Agreement knowing the risks that each Merchant's business may decline or fail, resulting in LC26 not receiving the Receivables Purchased Amount. Each Merchant agrees that the Purchase Price in exchange for the Receivables pursuant to this Agreement equals the fair market value of such Receivables. LC26 has purchased and shall own all the Receivables described in this Agreement up to the full Receivables Purchased Amount as the Receivables are created. Payments made to LC26 in respect to the full amount of the Receivables shall be conditioned upon each Merchant's sale of products and services and the payment therefor by each Merchant's customers in the manner provided in this Agreement. Although certain jurisdictions require the disclosure of an Annual Percentage Rate or APR in connection with this Agreement, those disclosures do not change the fact that the transaction encompassed by this Agreement is not a loan and does not have an interest rate.

**16. Power of Attorney.** Each Merchant irrevocably appoints LC26 as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to LC26, or, if LC26 considers an Event of Default to have taken place under Section 34, to settle all obligations due to LC26 from each Merchant, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral (which is defined in Section 33); (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents, or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign each Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to LC26; and (v) to file any claims or take any action or institute any proceeding which LC26 may deem necessary for the collection of any of the unpaid Receivables Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Receivables Purchased Amount.

**I have read and agree to the terms and conditions set forth above:**

Name: FURAT NAJAH ALSAIGH   Title: OWNER   Date: 4/27/2022

DocuSign Envelope ID: 6BF7C841-B551-4337-86E5-B46B760A0C4D
Case 1:22-cv-05758 Document 1-1 Filed 07/07/22 Page 14 of 16

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**17. Protections Against Default.** The following Protections 1 through 7 may be invoked by LC26, immediately and without notice to any Merchant in the event:

(a) Any Merchant takes any action to discourage the use of methods of payment ordinarily and customarily used by its customers or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks and credit cards for the purchase of any Merchant's services and products;

(b) Any Merchant changes its arrangements with any Processor in any way that is adverse to LC26;

(c) Any Merchant changes any Processor through which the Receivables are settled to another electronic check and/or credit card processor or permits any event to occur that could cause diversion of any Merchant's check and/or credit card transactions to another such processor;

(d) Any Merchant interrupts the operation of its business (other than adverse weather, natural disasters, or acts of God) or transfers, moves, sells, disposes, or otherwise conveys its business or assets without (i) the express prior written consent of LC26 and (ii) the written agreement of any purchaser or transferee to the assumption of all of any Merchant's obligations under this Agreement pursuant to documentation satisfactory to LC26; or

(e) Any Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for any Merchant's goods or services with any means other than checks and/or credit cards that are settled through Processor. These protections are in addition to any other remedies available to LC26 at law, in equity, or otherwise available pursuant to this Agreement.

(f) LC26 considers any Event of Default listed in Section 34 to have taken place.

Protection 1: The full uncollected Receivables Purchased Amount plus all fees due under this Agreement may become due and payable in full immediately.

Protection 2. LC26 may enforce the provisions of the Guarantee against Guarantor.

Protection 3. LC26 may enforce its security interest in the Collateral identified in Section 33.

Protection 4. LC26 may proceed to protect and enforce its rights and remedies by litigation or arbitration.

Protection 5. If requested by LC26, Merchant shall deliver to LC26 an executed assignment of lease of each Merchant's premises in favor of LC26. Upon breach of any provision in this Section 17, LC26 may exercise its rights under such assignment of lease.

Protection 6. LC26 may debit any Merchant's depository accounts wherever situated by means of ACH debit or electronic or facsimile signature on a computer-generated check drawn on any Merchant's bank account or otherwise, in an amount consistent with the terms of this Agreement.

Protection 7. LC26 will have the right, without waiving any of its rights and remedies and without notice to any Merchant and/or Guarantor, to notify each Merchant's credit card and/or check processor of the sale of Receivables hereunder and to direct such credit card processor to make payment to LC26 of all or any portion of the amounts received by such credit card processor on behalf of each Merchant. Each Merchant hereby grants to LC26 an irrevocable power-of-attorney, which power-of-attorney will be coupled with an interest, and hereby appoints LC26 and its representatives as each Merchant's attorney-in-fact to take any and all action necessary to direct such new or additional credit card and/or check processor to make payment to LC26 as contemplated by this Section.

**18. Protection of Information.** Each Merchant and each person signing this Agreement on behalf of each Merchant and/or as Owner, in respect of himself or herself personally, authorizes LC26 to disclose information concerning each Merchant, Owner and/or Guarantor's credit standing and business conduct to agents, affiliates, subsidiaries, and credit reporting bureaus. Each Merchant, Guarantor, and Owner hereby waives to the maximum extent permitted by law any claim for damages against LC26 or any of its affiliates relating to any (i) investigation undertaken by or on behalf of LC26 as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**19. Confidentiality.** Each Merchant understands and agrees that the terms and conditions of the products and services offered by LC26, including this Agreement and any other LC26 documents (collectively, "Confidential Information") are proprietary and confidential information of LC26. Accordingly, unless disclosure is required by law or court order, Merchant(s) shall not disclose Confidential Information of LC26 to any person other than an attorney, accountant, financial advisor, or employee of any Merchant who needs to know such information for the purpose of advising any Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising any Merchant and first agrees in writing to be bound by the terms of this Section 19.

**I have read and agree to the terms and conditions set forth above:**

Name: FURAT NAJAH ALSAIGH   Title: OWNER   Date: 4/27/2022

DocuSign Envelope ID: 6817C441B554337385B5F5876630404

Case 1:22-cv-05758 Document 1-1 Filed 07/07/22 Page 15 of 16

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**20. D/B/As.** Each Merchant hereby acknowledges and agrees that LC26 may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between LC26 and each Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**21. Financial Condition and Financial Information.** Each Merchant represents, warrants, and covenants that its bank and financial statements, copies of which have been furnished to LC26, and future statements which will be furnished hereafter at the request of LC26, fairly represent the financial condition of each Merchant at such dates, and that since those dates there have been no material adverse changes, financial or otherwise, in such condition, operation, or ownership of any Merchant. Each Merchant has a continuing affirmative obligation to advise LC26 of any material adverse change in its financial condition, operation, or ownership.

**22. Governmental Approvals.** Each Merchant represents, warrants, and covenants that it is in compliance and shall comply with all laws and has valid permits, authorizations, and licenses to own, operate, and lease its properties and to conduct the business in which it is presently engaged.

**23. Authorization.** Each Merchant represents, warrants, and covenants that it and each person signing this Agreement on behalf of each Merchant has full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**24. Insurance.** Each Merchant represents, warrants, and covenants that within ten days after written notice of a request by LC26, Merchant(s) will maintain business-interruption insurance naming LC26 as loss payee and additional insured in amounts and against risks as are satisfactory to LC26 and shall provide LC26 proof of such insurance upon request.

**25. Electronic Check Processing Agreement.** Each Merchant represents, warrants, and covenants that it will not, without LC26's prior written consent, change its Processor, add terminals, change its financial institution or bank account, or take any other action that could have any adverse effect upon any Merchant's obligations under this Agreement.

**26. Change of Name or Location.** Each Merchant represents, warrants, and covenants that it will not conduct its business under any name other than as disclosed to LC26 or change any place(s) of its business without prior written consent from LC26.

**27. Estoppel Certificate.** Each Merchant represents, warrants, and covenants that it will, at any time, and from time to time, upon at least two day's prior notice from LC26 to that Merchant, execute, acknowledge, and deliver to LC26 and/or to any other person or entity specified by LC26, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Receivables Purchased Amount or any portion thereof have been paid.

**28. No Bankruptcy.** Each Merchant represents, warrants, and covenants that as of the date of this Agreement, it does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against any Merchant. Each Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. Each Merchant further warrants that there will be no statutory presumption that it would have been insolvent on the date of this Agreement.

**29. Unencumbered Receivables.** Each Merchant represents, warrants, and covenants that it has good, complete, and marketable title to all Receivables, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges, and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with this Agreement or adverse to the interests of LC26, other than any for which LC26 has actual or constructive knowledge as of the date of this Agreement.

**30. Stacking.** Each Merchant represents, warrants, and covenants that it will not enter into with any party other than LC26 any arrangement, agreement, or commitment that relates to or involves the Receivables, whether in the form of

**I have read and agree to the terms and conditions set forth above:**

Name: _FURAT NAJAH ALSAIGH_  Title: __OWNER__  Date: _4/27/2022_

FILED: KINGS COUNTY CLERK 06/08/2022 11:49 AM
NYSCEF DOC. NO. 3
INDEX NO. 516493/2022
RECEIVED NYSCEF: 06/08/2022

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

a purchase of, a loan against, collateral against, or the sale or purchase of credits against Receivables without the prior written consent of LC26.

**31. Business Purpose.** Each Merchant represents, warrants, and covenants that it is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and each Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family, or household purposes.

**32. Default Under Other Contracts.** Each Merchant represents, warrants, and covenants that its execution of and/or performance under this Agreement will not cause or create an event of default by any Merchant under any contract with another person or entity.

**33. Security Interest.** To secure each Merchant's performance obligations to LC26 under this Agreement and any future agreement with LC26, each Merchant hereby grants to LC26 a security interest in collateral (the "Collateral"), that is defined as collectively: (a) all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by any Merchant; and (b) all proceeds, as that term is defined by Article 9 of the UCC. The parties acknowledge and agree that any security interest granted to LC26 under any other agreement between any Merchant or Guarantor and LC26 (the "Cross-Collateral") will secure the obligations hereunder and under this Agreement. Negative Pledge: Each Merchant agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Cross-Collateral, as applicable.

Each Merchant agrees to execute any documents or take any action in connection with this Agreement as LC26 deems necessary to perfect or maintain LC26's first priority security interest in the Collateral and the Cross-Collateral, including the execution of any account control agreements. Each Merchant hereby authorizes LC26 to file any financing statements deemed necessary by LC26 to perfect or maintain LC26's security interest, which financing statements may contain notification that each Merchant has granted a negative pledge to LC26 with respect to the Collateral and the Cross-Collateral, and that any subsequent lienor may be tortiously interfering with LC26's rights. Each Merchant shall be liable for and LC26 may charge and collect all costs and expenses, including but not limited to attorney fees, which may be incurred by LC26 in protecting, preserving, and enforcing LC26's security interest and rights. Each Merchant further acknowledges that LC26 may use another legal name and/or D/B/A or an agent when designating the Secured Party when LC26 files the above-referenced financing statement(s).

**34. Events of Default.** An "Event of Default" may be considered to have taken place if any of the following occur:
(1) Any Merchant violates any term or covenant in this Agreement;
(2) Any representation or warranty by any Merchant in any Agreement with LC26 that has not been terminated proves to have been incorrect, false, or misleading in any material respect when made;
(3) Any Merchant fails to provide LC26 with written notice of any material change in its financial condition, operation, or ownership within seven days thereafter (unless a different notice period is specifically provided for elsewhere in this Agreement;
(4) the sending of notice of termination by any Merchant or Guarantor;
(5) Any Merchant transports, moves, interrupts, suspends, dissolves, or terminates its business intentionally and not in the ordinary course without the prior written consent of LC26 other than a bankruptcy filing;
(6) Any Merchant transfers or sells all or substantially all of its assets without the prior written consent of LC26;
(7) Any Merchant makes or sends notice of any intended bulk sale or transfer by any Merchant without the prior written consent of LC26;
(8) Any Merchant uses multiple depository accounts without the prior written consent of LC26;
(9) Any Merchant changes the Account without the prior written consent of LC26;
(10) LC26 is not provided with updated login or password information for the Account within one business day after any such change is made by any Merchant;
(11) Any Merchant fails to send bank statements, merchant account statements, or bank login information for the Account within two business days after a written request for same is made by LC26;
(12) Any Merchant performs any act that reduces the value of any Collateral granted under this Agreement;

**I have read and agree to the terms and conditions set forth above:**

Name: FURAT NAJAH ALSAIGH    Title: OWNER    Date: 4/27/2022