UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Legacy Capital 26, LLC<br><br>Plaintiff,<br><br>-v-<br><br>Chaldean Enterprises, LLC d/b/a Speedy Weedy and Furat Najah Alsaigh<br><br>Defendants. | Case No. 1:22-cv-05758 |

## DEFENDANTS' ANSWER TO COMPLAINT

Defendants Chaldean Enterprise, LLC d/b/a Speedy Weedy ("Company Defendants") and Furat Najah Alsaigh ("Alsaigh") (collectively, "Defendants"), by and through their attorneys White and Williams LLP, hereby answer the complaint filed by plaintiff, as follows:

1. It is admitted that Plaintiff is a New York corporation. The remaining allegations in paragraph 1 constitute legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations.

2. Admitted. Company Defendants are California businesses incorporated in California and located in California.

3. Admitted. It is admitted that Defendant Alsaigh is a resident of California and principal of Company Defendants.

4. Denied as stated. Defendants admit that on April 26, 2022, Chaldean Enterprise entered into an Agreement with Plaintiff. The remaining allegations as set forth in paragraph 4 constitute legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations.

5. Denied as stated. The allegations in paragraph 5 constitute legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations.

6. Denied as stated. The allegations in paragraph 6 constitute legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations.

7. Denied as stated. The allegations in paragraph 7 constitute legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations.

8. Denied. The allegations in paragraph 8 constitute legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations.

**AS AND FOR THE FIRST CAUSE OF ACTION**
**(Breach of Contract as to Defendant-Seller)**

9. Defendants repeat their answers to each and every allegation previously made herein as if same were more fully set forth at length herein.

10. Denied as stated. It is admitted that Defendants remitted payment to Plaintiff. The remaining allegations contained in paragraph 10 constitute legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations. Moreover, transaction is a criminally usurious loan and is void ab initio.

11. Denied as stated. The allegations contained in paragraph 11 constitute legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations. Moreover, the transaction is a criminally usurious loan and is void ab initio.

29241099v.1

12. Denied. The allegations contained in paragraph 12 constitute legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations. Moreover, the transaction is a criminally usurious loan and is void ab initio.

13. Denied. The allegations contained in paragraph 13 constitute legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations. Moreover, the transaction is a criminally usurious loan and is void ab initio.

14. Denied. The allegations contained in paragraph 14 constitute legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations. Moreover, the transaction is a criminally usurious loan and is void ab initio.

15. Denied. The allegations contained in paragraph 15 constitute legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations. Moreover, the transaction is a criminally usurious loan and is void ab initio.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Breach of Guaranty as to Defendant Guarantor)**

16. Defendants repeat their answers to each and every allegation previously made herein as if same were more fully set forth at length herein.

17. Denied as stated. It is admitted that the Agreement includes a form titled "Guarantee." The remaining allegations contained in paragraph 17 constitute legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations.

18. Denied as stated. The allegations contained in paragraph 18 constitute legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations. Moreover, the transaction is a criminally usurious loan and is void ab initio.

19.     Denied. The allegations contained in paragraph 19 constitute legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations.  The transaction is a criminally usurious loan and is void ab initio.

**WHEREFORE**, Defendants Chaldean Enterprise, LLC; Speedy Weedy ("Company Defendants") and Furat Najah Alsaigh ("Alsaigh") demand judgment dismissing Plaintiff's Summons and Complaint, together with costs, expenses, disbursements, and attorney's fees incurred in the defense of this action, and such other and further relief as this Court deems just and proper.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses and reserve the right to assert others that may emerge as the case proceeds:

1.      Plaintiff's sham form of MCA agreements (the "MCA Agreements"), including the one entered into by Defendants, are unconscionable contracts of adhesion that are not negotiated at arms-length.

2.      Instead, they contain one-sided terms that prey upon the desperation of the small business and their individual owners and help conceal the fact that the transactions, including the one involving Plaintiffs, are really loans.

3.      Among these one-sided terms, the MCA Agreements include:  (1) a provision giving the MCA company the irrevocable right to withdraw money directly from the merchant's bank accounts, (2) moving or selling the business or any assets without permission from the MCA company, (4) a one-sided attorneys' fees provision obligating the merchant to pay the MCA company's attorneys' fees but not the other way around, (5) a venue and choice-of-law provision requiring the merchant to litigate in a foreign jurisdiction under the laws of a foreign jurisdiction,

-5-

(6) a personal guarantee, the revocation of which is an event of default, (7) a jury trial waiver, (8) a class action waiver, (9) a collateral and security agreement providing a UCC lien over all of the merchant's assets, (10) a prohibition of obtaining financing from other sources, (11) the maintenance of business interruption insurance, (12) an assignment of lease of merchant's premises in favor of the MCA company, (13) the right to direct all credit card processing payments to the MCA company, (14) a power-of-attorney "to take any and all action necessary to direct such new or additional credit card processor to make payment to [Plaintiff]," and (15) a power of attorney authorizing the MCA company to take any action or execute any instrument or document to settle all obligations due.

4. The MCA Agreements are also unconscionable because they are designed to fail. Among other things, the MCA Agreements are designed to result in a default in the event that the merchant's business suffers any downturn in sales by (1) forcing the merchant to wait until the fifteenth of each month before entitling it to invoke the reconciliation provision, (2) preventing the merchant from obtaining other financing, (3) and requiring the merchant to continuously represent and warrant that there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of merchant.

5. Plaintiff uses a sham reconciliation provision to disguise the loans.

6. In order to evade state usury laws, Plaintiff includes a sham reconciliation provision in the MCA Agreements to give the appearance that the loans do not have a definite term.

7. Under a legitimate reconciliation provision, if a merchant pays more through its fixed daily payments than it actually received in receivables, the merchant is entitled to seek the repayment of any excess money paid. Thus, if sales decrease, so do the payments.

8. For example, if an MCA company purchased 25% of the merchant's receivables, and the merchant generated $100,000 in receivables for the month, the most that the MCA company is entitled to keep is $25,000. Thus, if the merchant paid $40,000 through its daily payments, then the merchant is entitled to $15,000 back under the sham reconciliation provision.

9. In order to ensure that a merchant can never use their sham reconciliation provision, however, Plaintiff falsely represents that the fixed daily payment amount is a good-faith estimate of the percentage of receivables purchased. By doing so, Plaintiff ensures that if sales decrease, the required fixed daily payments remain the same.

10. For example, if 25% of a merchant's actual monthly receivables would result in a daily payment of $1,000, Plaintiff falsely states that the good-faith estimate is only $500 per day so that if sales did in fact decrease by 50%, the merchant would not be able to invoke the reconciliation provision.

11. On information and belief, Plaintiff does not have a reconciliation department, does not perform reconciliations, and has never refunded a merchant money as required under their sham reconciliation provision.

12. In fact, Plaintiff's MCA Agreements specifically require Plaintiff MCA companies to affirmatively reconcile the accounts each month but never do.

13. Plaintiff also intentionally disguised the true nature of its transactions.

14. Despite their documented form, the transactions are, in economic reality, loans that are absolutely repayable. Among other hallmarks of a loan:

    i. The daily payments required by the MCA Agreements were fixed and the so-called reconciliation provision was mere subterfuge to avoid this state's usury laws. Rather, just like any other loan, the purchased amount was to be repaid within a specified time;

ii. The default and remedy provisions purported to hold the merchants absolutely liable for repayment of the purchased amount. The loans sought to obligate the merchants to ensure sufficient funds were maintained in a designated account to make the daily payments and, after a certain number of instances of insufficient funds being maintained in the account, the merchants were in default and, upon default, the outstanding balance of the purchased amount became immediately due and owing;

iii. While the MCA Agreements purported to "assign" all of the merchant's future account receivables to Plaintiff until the purchased amount was paid, the merchants retained all the indicia and benefits of ownership of the account receivables including the right to collect, possess and use the proceeds thereof. Indeed, rather than purchasing receivables, Plaintiff merely acquired a security interest in the merchant's accounts to secure payment of the purchased amount;

iv. Unlike true receivable purchase transactions, Plaintiff Transactions were underwritten based upon an assessment of the merchant's credit worthiness; not the creditworthiness of any account debtor;

v. The purchased amount was not calculated based upon the fair market value of the merchant's future receivables, but rather was unilaterally dictated by Plaintiff based upon the interest rate it wanted to be paid. Indeed, as part of the underwriting process, Plaintiff did not request any information concerning the merchant's account debtors upon which to make a fair market determination of their value;

vi. The amount of the daily payments was determined based upon when Plaintiff wanted to be paid, and not based upon any good-faith estimate of the merchant's future account receivables;

vii. Plaintiff assumed no risk of loss due to the merchant's failure to generate sufficient receivables because the failure to maintain sufficient funds in the Account constituted a default under the agreements;

viii. Plaintiff required that the merchants to undertake certain affirmative obligations and make certain representations and warranties that were aimed at ensuring the company would continue to operate and generate receivables and a breach of such obligations, representations and warranties constituted a default, which fully protected Plaintiff from any risk of loss resulting from the merchant's failure to generate and collect receivables.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred as they arise out of fraudulent activity.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred under the N.Y. Penal Law §190.40.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

The Agreement is unenforceable on the grounds of unconscionability because, among other things and without limitation, Plaintiff knowingly preyed upon a financially distressed company, the Agreement charges a usurious rate of interest, and conceals the true nature of the transaction. Moreover, the purported reconciliation provision contained in the contract is illusory, impossible to comply with and intentionally inserted by Plaintiff to further conceal the true nature of the transaction.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

The contract is illegal because it purports to purchase the receivables of marijuana sales, which is prohibited under existing federal law.

29241099v.1

-9-

Date: August 15, 2022                                     Respectfully submitted,

                                                                      **WHITE AND WILLIAMS LLP**

By: _____
                                                                      Shane R. Heskin, Esquire
                                                                       Times Square Tower
                                                                       7 Times Square, Suite 2900
                                                                       New York, NY 10036
                                                                       (215) 864-6329
                                                                       heskins@whiteandwilliams.com
                                                                       *Attorneys for Defendants*

29241099v.1

-10-

## CERTIFICATE OF SERVICE

      I hereby certify that on August 15, 2022, I electronically filed the foregoing document with the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

                                                                                               _____
                                                                                                Shane R. Heskin